Filed 5/31/13  P. v. Lacy CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>COY LACY,<br><br>Defendant and Appellant. | A136547<br><br>(Solano County Super. Ct.<br>No. VCR204923) |

Defendant appeals from the revocation of his felony probation, contending that insufficient evidence was introduced at the contested probation revocation hearing to sustain either alleged violation.  We disagree and affirm.

## I. Background

In December of 2008, defendant pleaded guilty to second degree robbery (Pen. Code, § 211), and in February of 2009 he was placed on three years of felony probation. A standard condition of his probation was that he obey all laws.  On September 12, 2011, the district attorney filed a request to revoke defendant's probation, alleging that he possessed a firearm and shot into an occupied dwelling.[1]  The underlying facts also led to the filing of a felony complaint charging defendant with shooting at an inhabited dwelling (Pen. Code, § 246), and felon in possession of a firearm (Pen. Code, § 12021) with prior conviction allegations.  Defendant was held to answer on these charges on

_____

[1] Defendant's probation had previously been revoked, based upon his possession of marijuana, in 2010.  His probation was reinstated and he was ordered to serve 60 days in county jail.

1

October 28, 2011. The new charges were, however, dismissed upon motion of the district attorney after defendant's probation on the older docket was revoked.

Evidence adduced at the probation revocation hearing[2] included the testimony of a civilian witness, Miguel Buchwald, who testified that he was driving on Curtola Boulevard in Vallejo on September 8, 2011, at approximately 11:30 in the morning, when he heard sounds similar to three or four gunshots. He saw a man with a gun in his hand, running from Marin Street towards Sonoma Boulevard. The individual was African-American, five feet eight to five feet nine inches tall, wearing a blue outfit. The gun appeared to be a flat gun; not a revolver, but a handgun. The person with the gun was running in the same direction Buchwald was driving, so Buchwald took some photos of him with his cell phone, from behind. Copies of these photographs were introduced at the probation revocation hearing.

Buchwald continued to follow the individual with the gun a block beyond Sonoma Boulevard; the person turned towards Sutter Street. Buchwald was unable to directly follow due to a barrier in the road, but he went to the next street, made a U-turn, came back and turned right on Sutter Street. He drove a block or two up Sutter Street and saw that the police had apprehended "that same person or what looked to be the same person, based on his dress." The individual the police had detained was an African-American man "that was wearing the same kind of clothing" that Buchwald had observed on the person fleeing with the gun. The height and weight were the same or similar, and the person had the same build. Buchwald got out of his car and told the officers that he had taken some photos; he later e-mailed them to the police.

Buchwald never saw the face of the individual at the time the person was running with the gun; he only observed him from behind and from 30–50 feet away. He did later observe the face of the individual when the police had him detained. He only lost sight of the person with the gun for 45–60 seconds. When he observed the person with the police,

---

[2] It does not appear that the preliminary hearing transcript was used as the basis of the probation revocation (although statements from the hearing were used to impeach a witness).

he was across the street. He recognized him based on his clothing, his appearance and his build. In response to questioning by the court, Buchwald indicated that the individual that the police had detained was the individual he saw with the gun. He later clarified that what he "meant was that the person that I saw in police custody was dressed the same way, was the same height, the same build, the same race as the person that I saw running." Buchwald testified that he was "pretty sure" that the person who he took pictures of was the same person he later saw in police custody, and that although he did not see the face of the individual running with the gun and, thus, could not say that it was in fact the same person, "everything else points to that, from my perspective." Buchwald positively identified defendant, sitting with counsel at the probation hearing, as the same person that the police had in custody. While he was not sure, Buchwald felt he probably told the police that the person they had in custody was the person he had seen running with a gun.

Additional evidence was presented through the testimony of Officer Raul Munoz of the Vallejo Police Department. On September 8, 2011 at approximately 11:30 a.m., Officer Munoz was dispatched to a call of two subjects shooting at each other in the 200 block of Maine Street. The subjects were described as two Black male adults dressed in dark clothing. While driving westbound on Maine Street, Officer Munoz observed defendant on the north curb of Maine Street, walking eastbound. As soon as defendant saw the officer, he immediately turned around and rapidly started walking in the opposite direction. Defendant appeared to be sweating and was nervous. He said that he was on his way to the store to buy a cigarette at the Marin Market and that he was coming from the building across the street from the courthouse. Neither of those explanations made sense to Officer Munoz, considering the direction defendant had originally been going. Defendant told Officer Munoz that he had marijuana on his person; Munoz located a large sandwich baggie with eight smaller, clear plastic baggies, in defendant's jacket pocket. Based upon his training and experience in over 23 years as a police officer, Munoz identified the contents of the smaller baggies as marijuana. Defendant also had approximately $100 of many different denominations of cash. The manner of packaging

of the marijuana, the lack of indicia of possession for personal use, and the amount and denominations of cash, was consistent with possession of marijuana for sale. Officer Munoz did not locate a gun on defendant, or in a later search of the immediate area.

Based upon this evidence, the trial court determined that defendant was in violation of his probation, in that he illegally possessed a firearm and marijuana.[3] Defendant was sentenced to three years in state prison. This timely appeal followed.

## II. Discussion

A defendant's probation may be revoked at any time during the probationary period when the prosecution demonstrates by a preponderance of the evidence that the defendant has failed to comply with the probationary terms. (*People v. Urke* (2011) 197 Cal.App.4th 766, 772.) The trial court's resolution of evidentiary conflicts at a probation revocation hearing are reviewed under the substantial evidence standard. (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848 (*Kurey*).) Defendant contends that the evidence presented at the probationary revocation hearing failed to meet this standard, arguing that there was not substantial evidence that he either illegally possessed a firearm or that he possessed marijuana for sale. Defendant's contention lacks merit.

Viewed in totality, the witness Buchwald's testimony established by at least a preponderance of the evidence that defendant possessed a firearm on the date in question. He testified that he heard what sounded like gunshots, saw a man running with a gun in his hand, and provided a description (African-American man, five feet eight or five feet nine inches tall, wearing a blue outfit). He followed the man until he lost sight of him for a few seconds and then observed the man in police custody. The man that police had detained appeared to be the same man he saw running with the gun, based upon his appearance (although he had not seen the face of the individual who was running with the gun). The man in police custody was defendant. Further, Officer Munoz testified that he received a report of two Black male adults dressed in dark clothing shooting at each other, in the area where Buchwald heard the shots. Defendant was observed near that

---

[3] Defendant had previously possessed a physician's recommendation for medical marijuana, but that had expired on May 18, 2011.

area, and turned and walked rapidly in the opposite direction upon seeing the police. He matched the description given by the original caller reporting the shooting incident, as well as Buchwald's description. While Buchwald could not positively identify defendant as the person he saw with the gun (since he did not observe that individual's face), the evidence was sufficient to establish by a preponderance of the evidence that defendant illegally possessed a firearm. We, of course, give great deference to the trial court's findings and resolve all conflicting evidence in favor of the court's decision. (*Kurey*, *supra*, 88 Cal.App.4th at pp. 848–849.) Here, substantial evidence supports the trial court's determination that defendant did in fact possess a firearm.

Additionally, substantial evidence supports the trial court's finding that defendant illegally possessed marijuana (and indeed that he possessed it for sale). Officer Munoz testified that he found eight small plastic baggies of marijuana inside a larger plastic baggie on defendant's person. This manner of packaging was consistent with possession for sale, as was the amount of cash in various denominations that defendant also possessed.

Substantial evidence supports the trial court's factual determinations that defendant illegally possessed marijuana and a firearm. The prosecution met their burden of proving by a preponderance of the evidence that defendant violated the terms of his probation.

### III. Disposition

The judgment is affirmed.

_____  
Sepulveda, J.*

We concur:

_____  
Margulies, Acting P.J.

_____  
Dondero, J.

* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.